IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NATHAN MCNEIL,                          :
                                        :
            Petitioner,                 :
                                        :
    v.                                  :       Civil Action No. 16-1083-CFC
                                        :
DANA METZGER, Warden, and               :
ATTORNEY GENERAL OF THE                 :
STATE OF DELAWARE,                      :
                                        :
            Respondents.[1]             :

---

Nathan McNeil. *Pro se* Petitioner.

Maria T. Knoll, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**[2]

March /0 , 2020
Wilmington, Delaware

---

[1] Warden Dana Metzger has replaced former Warden David Pierce, an original party to
this case. *See* Fed. R. Civ. P. 25(d).

[2] This case was originally assigned to the Honorable Gregory M. Sleet, and was re-
assigned to the undersigned judge on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Petitioner Nathan McNeil's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1) The State filed an Answer, to which Petitioner filed a Reply. (D.I. 15; D.I. 16) For the reasons discussed, the Court will deny the Petition.

I. **BACKGROUND**

    **A. The Crimes**

In the summer of 2012, Petitioner was robbed at the Whatcoat Village Apartments in Dover, Delaware. (D.I. 15 at 3) Petitioner admitted to the Dover Police that he sold counterfeit shoes and clothing from his vehicle. After he was robbed, Petitioner threatened to kill the suspected robbers, Rondree Campbell and Lelcaro Rembeit. *Id.*

On February 1, 2013, Petitioner saw Rondree Campbell and some of Campbell's friends at a Dover store and recognized Campbell as the person who had previously stolen sneakers from him. (D.I. 15 at 3) Later, during the evening of February 1, 2013, Jalen Soto was standing outside Building 992 at the Whatcoat Village Apartments in Dover with Rondree Campbell and several other individuals. *Id.* at 3-4. That night Soto observed a black Nissan Maxima automobile enter the Dover neighborhood from nearby Saulsbury Road. *Id.* at 4. The black vehicle made a U-turn and stopped in front of the apartment building with the driver's side of the vehicle facing Building 992, where Soto, Campbell, and others were standing. Gunfire erupted from the driver's side of the black Nissan Maxima. After several shots were fired from the black Nissan Maxima, the vehicle drove away. (D.I. 15 at 4)

Soto was shot in the arm that evening, and a teenager in the group, Imeer Waddell, was fatally shot in the head. (D.I. 15 at 4) The Dover Police recovered spent 9mm shell casings at the shooting scene. Both Jalen Soto and Rondree Campbell told police that the gunfire had come from the black Nissan Maxima. *Id.*

In 2013, Petitioner was the registered owner of a black 1999 Nissan Maxima automobile. (D.I. 15 at 3-4) After witnesses reported previously seeing Petitioner driving a black Nissan Maxima automobile similar to the vehicle involved in the February 1 shooting, the police questioned Petitioner about his car. *Id.* Petitioner initially told the Dover Police that he had sold his vehicle to a co-worker, Charles Haines, who had picked up the vehicle on February 12, 2013, and taken it to Haines's home in Bear, Delaware. (DI. 15 at 4) The Dover Police also interviewed Monique, Petitioner's wife, concerning the location of her husband's black Nissan Maxima automobile. Initially, Monique claimed the couple had traded the car, but she could not recall the name of the dealership. Thereafter, Monique changed her story and claimed that Petitioner had sold the vehicle three weeks earlier to a friend, although she did not know the friend's name. *Id.*

The Dover Police subsequently located at the Bear residence of Charles Haines the black Nissan Maxima automobile believed to have been used in the February 1, 2013 shooting. (D.I. 15 at 4-5) Initially, Haines told police that he had been discussing purchasing the vehicle from Petitioner for several weeks, and that he picked up the car on February 12, 2013 from Petitioner's Dover apartment. The investigating officer then spoke to Haines's neighbor, Steve Bruchey, about the black Nissan Maxima. *Id.*

2

Burchy said the black vehicle had been parked in Haines's rear yard for two weeks and he recalled seeing a large black male looking at the vehicle the previous evening. (D.I. 15 at 5) At that point, Haines changed his story and eventually told the police that Petitioner and his wife brought the vehicle to his home on February 2, 2013 after dark in order to hide the vehicle. According to Haines, Petitioner told Haines to say that Haines had picked up the vehicle in Dover on February 12, and Haines was going to buy the vehicle for $600. *Id.*

The police towed the vehicle to the Dover Police Department and conducted a vehicle search pursuant to a search warrant on February 14, 2013. (D.I. 15 at 5) During this motor vehicle search, a 9 mm shell casing was found on the car's exterior lodged in a space below the windshield wipers. A subsequent ballistics comparison revealed that the 9 mm shell casing found on Petitioner's car matched three shell casings collected at the Whatcoat Apartments shooting scene. *Id.*

Following these investigative developments, Petitioner's wife told the Dover Police that she had accompanied her husband to drop off the Nissan Maxima in Bear. (D.I. 15 at 5) At this point, Petitioner also "confessed to his involvement in the shooting." *Id.*

Petitioner was arrested on February 14, 2013, and he was charged by indictment with first degree murder, possession of a firearm or firearm ammunition by a person prohibited, second degree assault, five counts of first degree reckless endangering, and seven counts of possession of a firearm during the commission of a felony. (D.I. 15 at 6); *see also McNeil v. State*, 148 A.2d 258 (Table), 2016 WL 5118302, at *1 (Del. Sept.

3

20, 2016). Petitioner's wife was later arrested in January 2014 for hindering prosecution because of the initial false information she gave to the police investigating the February 1, 2013 fatal drive-by shooting. (D.I. 15 at 6)

Petitioner's case proceeded to trial in the Kent County Superior Court on March 10, 2014. (D.I. 15 at 6) During the State's case-in-chief, State witness Rondree Campbell became reluctant to admit his 2012 theft of sneakers from Petitioner. As a result of this witness problem with Rondree Campbell, the State extended a plea offer to Petitioner on the morning of March 18, 2014, the fifth day of trial. *Id.*

### B. The Plea

The initial plea offer extended to Petitioner on the morning of March 18, 2014 did not contain any reference to the separate pending hindering prosecution charge against Petitioner's wife. (D.I 15 at 6) However, during the plea discussions that occurred after the initial presentation of the offer, the State amended the plea offer to provide that the charges against Petitioner's wife would be *nolle prossed. Id.* Petitioner pled guilty to second degree murder (as a lesser-included offense of first degree murder) and possession of a firearm during the commission of a felony ("PFDCF"), in exchange for which the State dropped the remaining thirteen charges and requested immediate sentencing. *Id.* On the basis of two prior violent felony convictions (one in Delaware and one in New York State), Petitioner was eligible for potential habitual criminal sentencing under 11 Del. C. § 4214(b) and was facing the possibility of a mandatory life sentence if convicted of first degree murder. (D.I. 13-1 at 35) However, as part of the plea agreement, the State also capped its Level V incarceration recommendation at an

4

aggregate of twenty-five years (twenty years of which was minimum mandatory time). (D.I. 15 at 6-7) The Superior Court immediately sentenced Petitioner as follows: (1) to thirty years of Level V incarceration, suspended after twenty years for decreasing levels of supervision, for the second degree murder conviction; and (2) to five years of Level V incarceration for the PFDCF conviction. (D.I. 15 at 2) Petitioner did not appeal his conviction or sentence.

### C. Post-Conviction Proceedings

On October 8, 2014, Petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 15 at 2) On August 24, 2015, a Delaware Superior Court Commissioner issued a Report and Recommendation to deny the Rule 61 motion. (D.I. 13-1 at 60-68) The Superior Court adopted the Report and Recommendation and denied the Rule 61 motion on November 23, 2015. (D.I. 13-2 at 4-5) Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment on September 20, 2016. *See McNeil*, 2016 WL 5118302, at *4.

Petitioner filed the instant habeas Petition in November 2016. (D.I. 1) On September 30, 2019, while the Petition was pending before the Court, Petitioner filed in the Delaware Superior Court a second Rule 61 motion. (D.I. 45-1 at 7) The Superior Court summarily dismissed the Rule 61 motion on October 30, 2019, (D.I. 45-1), and the Delaware Supreme Court affirmed that decision on January 16, 2020. *See McNeil v. State*, 2020 WL 261054 (D. Del. Jan. 16, 2020).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

6

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the

7

claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting

---

[3]*Murray*, 477 U.S. at 496.

8

"new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

9

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner asserts two Claims in his timely filed Petition: (1) he was coerced into entering a guilty plea in the middle of his trial by the arrest of his wife for hindering prosecution without probable cause; and (2) defense counsel provided ineffective assistance by failing to investigate and discover that police lacked probable cause to arrest his wife. (D.I. 3 at 11-12) According to Petitioner, if defense counsel had investigated, they would have discovered that the police waited thirteen months after the offense to charge and arrest his wife. He asserts that the purpose of this "late" prosecution was to coerce him to enter a guilty plea.

Petitioner presented the instant two Claims to the Delaware Supreme Court in his Rule 61 appeal. The Delaware Supreme Court held that Petitioner procedurally defaulted his involuntary plea argument under Delaware Superior Court Criminal Rule 61(i)(3) because he did not file a motion to withdraw his guilty plea or file a direct appeal. *See McNeil*, 2016 WL 5118302, at *2. Although the Delaware Supreme Court

10

construed Petitioner's ineffective assistance of counsel allegation as an attempt to establish cause and prejudice to excuse his procedural default, the state court ultimately determined that Petitioner could not avoid the procedural default because defense counsel's failure to investigate the circumstances surrounding the arrest of Petitioner's wife did not amount to constitutionally ineffective assistance of counsel. *Id.* at *2-3. For the following reasons, the Court concludes that the Delaware Supreme Court's decision does not warrant federal habeas relief.

## A. Claim One: Involuntary Plea

By clearly citing and applying the procedural bar of Rule 61(i)(3) to deny Claim One, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural ground effectuating a procedural default precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the Court cannot review the merits of Claim One absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner appears to allege ineffective assistance of defense counsel as cause for his default of Claim One. As explained later in this Opinion, the Court concludes that defense counsel's failure to investigate whether the police lacked probable cause to arrest and charge Petitioner's wife with hindering prosecution did not amount to

11

constitutionally ineffective assistance. *See infra* at 14-19. Consequently, Petitioner cannot establish cause for his default of Claim One.

Although the absence of cause obviates the need to address prejudice, the Court nevertheless concludes that Petitioner cannot demonstrate that he will suffer prejudice if Claim One is not reviewed. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and that he was satisfied with his counsel's representation. (D.I. 13-5 at 49-50) Petitioner also indicated that nobody forced or threatened him to enter the plea. (D.I. 13-5 at 48-49) He affirmatively answered that he understood the plea constituted a waiver of all of his trial rights, and that he is, in fact, guilty of the two charges. *Id.* at 46, 49. In turn, the Truth-In-Sentencing Guilty Plea Form signed by Petitioner indicates that he knowingly and voluntarily entered into his plea agreement; he was not promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of life under the criminal penalty statutes. (D.I. 13-5 at 46-47)

Petitioner's unsupported allegations about the State's coercive reason for prosecuting his wife fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Consequently, based on the aforementioned record, the Court concludes that Petitioner

12

has failed to provide any evidence sufficient to overcome the presumption that the statements he made during the plea colloquy should be accepted as true. *See* 28 U.S.C. § 2254(e). As a result, the Delaware Supreme Court reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy and on the Truth-In-Sentencing form.[4] *See McNeil*, 2016 WL 5118302, at *3. Based on this record, the Court concludes that Petitioner's guilty plea was intelligent, voluntary, and knowing. In short, Petitioner will not suffer prejudice as a result of his default of the instant claim.

Finally, the miscarriage of justice exception to the procedural default doctrine is inapplicable to excuse Petitioner's default, because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim One as procedurally barred.

### B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner contends that defense counsel provided ineffective assistance by failing to investigate whether the police had probable cause to arrest and charge his wife with hindering prosecution. The Delaware Supreme Court denied this argument as meritless on post-conviction appeal. Given the state court's adjudication of Claim Two, habeas relief will only be available if the Delaware Supreme Court's

---

[4]When addressing this same issue in Petitioner's Rule 61 proceeding, the Superior Court Commissioner correctly described the *Blackledge* standard and cited a state court case (*Mapp v. State*, 642 A.2d 237 (Table), 1994 WL 91264, at *2 (Del. 1994), which, in turn, cited *Sullivan v. State*, 636 A.2d 931, 937-38 (Del.1994)) that relied on *Blackledge*. (D.I. 13-1 at 66) Although the Delaware Supreme Court did not cite to *Blackledge* or any state court cases relying on *Blackledge* when determining that Petitioner was bound by the statements he made during the plea colloquy, the Delaware Supreme Court applied a rule identical to the one announced in *Blackledge*.

decision was either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

14

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland/Hill* standard as governing Petitioner's instant ineffective assistance of counsel contention. *See McNeil*, 2016 WL 5118302, at *2 n. 7. As a result, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id*. "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

After reviewing the record, the Court concludes that the Delaware Supreme Court's denial of the instant Claim involved a reasonable application of *Strickland* and *Hill*. First, in their Rule 61 affidavits, both of Petitioner's defense attorneys denied that Petitioner's wife's arrest played any part in the plea negotiations with the State. (D.I.

14-3 at 72, 79) They noted that the original plea offer did not contain any language concerning Petitioner's wife's criminal case, and described how the language regarding Petitioner's wife's charges was added to the plea agreement by the State during the plea negotiations that took place after the presentment of the initial plea offer. (D.I. 14-3 at 72, 79)

Second, the record belies Petitioner's assertion that the State charged his wife "right at the beginning of his trial." The arrest warrant application for Petitioner's wife is dated January 28, 2014, yet Petitioner's trial did not start until six weeks later, on March 10, 2014. (D.I. 13-1 at 86) Additionally, as explained by the Delaware Supreme Court:

> The police reports that [Petitioner] relies upon reflect that [Petitioner's] wife first told the police on February 14, 2013 that [Petitioner's] car, which was the suspected vehicle used in the drive-by shooting on February 1, 2013, was sold to a dealership and then said the car was sold to an unknown friend of [Petitioner's] three weeks earlier. The person who had the car told the police that [Petitioner] and his wife had dropped the car off with him on February 2, 2013.

*McNeil*, 2016 WL 5118302, at *3. These facts demonstrate that there was no reason for defense counsel to question if the police lacked probable cause to arrest Petitioner's wife for hindering prosecution. Moreover, nothing in the record supports Petitioner's allegation that there was some bad faith related to the timing of his wife's arrest. Given these circumstances, the Court concludes that the Delaware Supreme Court reasonably found that Petitioner did not demonstrate that defense counsel provided deficient performance under the *Strickland/Hill* standard.

The Court also concludes that the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard in holding that Petitioner failed to show that he suffered

16

actual prejudice from defense counsel's failure to investigate the circumstances surrounding his wife's arrest. By accepting the plea negotiated by counsel, Petitioner avoided the risk of receiving a mandatory life sentence if convicted of first degree murder at trial. In addition, as previously explained, Petitioner is bound by his statements during the plea colloquy that he was satisfied with defense counsel's performance, that he freely and voluntarily decided to plead guilty, and that no one, including his counsel and the State, forced him to plead guilty. *See supra* at 13-14. In light of the foregoing, Petitioner cannot establish a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty but for defense counsel's failure to investigate the probable cause surrounding his wife's hindering prosecution charge.

Accordingly, the Court will deny Claim Two as meritless.

## IV.    PENDING MOTIONS

Petitioner filed three motions during the pendency of this proceeding: (1) a Motion to Amend the Petition to include an argument under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) that his guilty plea should be vacated due to "newly discovered evidence" calling into question the credibility of the forensic expert, Carl Rone, who was scheduled to provide testimony about the ballistics evidence at Petitioner's trial (D.I. 35); (2) a Motion to Stay the proceeding in order to exhaust state remedies for his *Brady* argument concerning Carl Rone (D.I. 38); and (3) a Motion to Amend his Petition with the now-exhausted *Brady* argument based on his "newly discovered evidence" concerning forensic expert Carl Rone (D.I. 42). The Court notes that the same "newly

17

discovered evidence" forms the basis for all three Motions, namely, that Carl Rone, the State ballistics expert who processed the physical evidence (spent bullet casings) in Petitioner's case, was arrested in May 2018 and charged with providing false timesheets for work that was not performed during 2016 and 2017. *See State v. Phillips*, 2019 WL 1110900, at *6 (Del. Super. Ct. Mar. 11, 2019). Rone pled guilty to theft by false pretense and falsifying business records in 2018. *Id.* at *6 n. 47.

### A. Motion to Stay

The record reveals that Petitioner exhausted state court remedies for his *Brady* argument regarding Carl Rone after filing his Motion to Stay. (D.I. 42 at 2) Consequently, the Court will dismiss the Motion to Stay as moot.

### B. Motions to Amend

Viewed together, the two Motions to Amend seek to add the following two Claims to the instant Petition: (1) Petitioner's "conviction must be vacated because the State knowingly used [the] false, misleading, and unscientific expert affidavit/testimony/analysis [of Carl Rone] to positively identify shell casing found at the crime scene and in the alleged shooter's vehicle, which induced [Petitioner] into pleading guilty to a crime" for which he had proclaimed his innocence (D.I. 42 at 9) ("proposed *Brady*/involuntary plea claim"; and (2) defense counsel provided ineffective assistance by failing to conduct "any investigation into Mr. Rone's affidavit/testimony/analysis" (D.I. 42 at 18) because Petitioner would not have pled guilty but for defense counsels' assertion that Rone was going to testify that the bullets found

in the vehicle matched the bullets found in the victim's body (D.I. 35 at 1) ("proposed Rone/ineffective assistance claim").

Amendments to habeas petitions are governed by Federal Rule of Civil Procedure 15. *See United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999). Rule 15(a) provides that once a responsive pleading is served, a party may amend its pleading by leave of the court. *See* Fed. R. Civ. P. 15(a). "[T]he Supreme Court has indicated that in the absence of evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment [or] futility of amendment,' leave should be freely given." *Duffus*, 174 F.3d at 337; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Middlebrook v. Carroll*, 470 F. Supp. 2d 411, 419 (D. Del. 2007), *aff'd*, 293 F. App'x 858 (3d Cir. 2008).

An amendment is futile if the proposed pleading could not withstand a motion to dismiss. *See City of Cambridge Retirement Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 278 (3d Cir. 2018). One situation where an amendment would be futile arises when the new proposed claim is barred by the applicable statute of limitations. *See Duffus*, 174 F.3d at 337. Since federal habeas corpus actions are subject to a one-year statute of limitations,[5] a motion to amend a timely filed habeas petition "will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of [Rule 15(c)]." *Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008). However, under Rule 15(c), the statute of limitations will not bar amendment if the proposed amendment and

[5]See 28 U.S.C. § 2244(d)(1).

original pleading arise out of the same "conduct, transaction, or occurrence." Fed. R.

Civ. P. 15(c)(1)(B). In this situation, the amendment is said to "relate back" to the date

of the original pleading. *See id.*

In the habeas context, an amendment relates back to a habeas petition

under Rule 15(c) "[s]o long as the original and amended petitions state claims that are

tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A

claim will not relate back, however, to the extent that it "asserts a new ground for relief

supported by facts that differ in both time and type from those the original pleading set

forth." *Id.* at 650. As aptly explained by the Third Circuit:

> In searching for a common core of operative facts in the two
> pleadings courts should remain aware that "the touchstone
> for relation back is fair notice, because Rule 15(c) is
> premised on the theory that a party who has been notified of
> litigation concerning a particular occurrence has been given
> all the notice that statutes of limitations were intended to
> provide. Thus, only where the opposing party is given fair
> notice of the general fact situation and the legal theory upon
> which the amending party proceeds will relation back be
> allowed. For example, we have held that amendments that
> restate the original claim with greater particularity or amplify
> the factual circumstances surrounding the pertinent conduct,
> transaction, or occurrence in the preceding pleading fall
> within Rule 15(c) because the opposing party will have had
> sufficient notice of the circumstances surrounding the
> allegations contained in the amendment.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019)(internal quotes and citations

omitted).

Even if the proposed amendment relates back to the original petition such that it

is not time-barred, the proposed amendment may still be deemed futile. Two other

examples of futility in the habeas context include procedurally barred amendments and

20

amendments that lack arguable merit. *See Rushing v. Penn.*, 637 F. App'x 55, 58 (3d Cir. 2016)(finding no error with the District Court's decision that an amendment would be futile when the claims were indisputably meritless); *Bernard v. United States*, 2019 WL 3719405, at \*2 (D.N.J. Aug. 5, 2019)(noting that amending with time-barred claim that does not relate back would be futile); *Hall v. Phelps*, 641 F. Supp. 2d 334, 342 (D. Del. 2009)("an amendment to a habeas application will be considered futile when the claims are subject to a procedural default or lack arguable merit.").

In this case, although the Petition is timely, Petitioner filed his Motions to Amend long after the expiration of AEDPA's limitations period. A comparison of the allegations in Petitioner's original Petition and in the Motions to Amend demonstrates that the two proposed amended claims do not arise from a common core of operative facts with the original Claims. For instance, Petitioner's original involuntary plea Claim is not premised on the State's failure to disclose evidence (*i.e.*, *Brady* violations) or any allegations challenging the reliability of the evidence, whereas the proposed *Brady*/involuntary plea claim contends that the State failed to disclose that Rone's proposed testimony was false or misleading. In other words, the basis for the proposed *Brady*/involuntary plea claim is factually and legally distinct from the basis for the original involuntary plea Claim. *See Henderson v. Giguglielmo,* 138 Fed. App'x 463,466-67 (3d Cir.2005)(dismissing claims raised in amended habeas petition as untimely where claims were factually and legally distinct from claims raised in original petition, and therefore, did not "relate back" under Rule 15(c)).

21

The same can be said of Petitioner's proposed Rone/ineffective assistance claim. Even though Claim Two in the original Petition asserts ineffective assistance, the facts underlying the allegations in the proposed Rone/ineffective assistance claim and the facts underlying the allegations in the original ineffective assistance Claim are distinct in both time and type. The allegations in the proposed Rone/ineffective assistance regarding defense counsel's failure to investigate Carl Rone do not amplify or explain with greater particularity the factual circumstances surrounding the original ineffective assistance Claim's allegations concerning defense counsel's actions with respect to the arrest of Petitioner's wife. See Duffus, 174 F.3d at 336-37 (finding that a completely new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to a previously raised general ineffective assistance of counsel claim).

In sum, the Court will deny Petitioner's Motions to Amend on the basis of futility because the two proposed amended claims are entirely new and therefore time-barred.[6]

---

[6]Even if the proposed amended claims related back to the original Claims, the Court would deny the Motions to Amend on the basis of futility because the two proposed claims lack arguable merit. Rone's conviction did not involve mishandling evidence, falsifying documents related to Rone's examination of evidence, or the reports he produced and later testified about in criminal cases. In turn, Rone's misconduct concerning his payroll records occurred in 2016 and 2017, years after Petitioner entered a guilty plea in 2014. Even more significantly, there is no evidence that Rone committed misconduct in Petitioner's case or that his ballistics report was incorrect, and Petitioner has not demonstrated how the new issues concerning Rone's credibility created a significant change in the factual circumstances of his case. The Court's conclusion that Petitioner's proposed amended claims lack arguable merit is also supported by the fact that the Delaware Superior Court has rejected numerous other claims for postconviction relief based on Rone's misconduct and the credibility issues Rone's misconduct potentially created. See State v. McCoy, 2019 WL 3247174, at *4-5 (Del. Super. Ct. July 17, 2019)(holding that new evidence that Rone was arrested for "fraudulent and illegal activity" does not give rise to an actionable claim because McCoy

## V.    CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir.

L.A.R. 22.2 (2011). A certificate of appealability may be issued only when a petitioner

makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the Court concludes that the Petition must be

denied. Reasonable jurists would not find this Court's assessment of Petitioner's

constitutional claims to be debatable or wrong. Consequently, Petitioner has failed to

make a substantial showing of the denial of a constitutional right, and a certificate of

appealability will not be issued.

## VI.    CONCLUSION

For the foregoing reasons, the Court will deny the instant Petition. An

appropriate Order will be entered.

---

pled guilty and there was no evidence to suggest that the ballistics report was incorrect
or that McCoy was innocent); *State v. Phillips*, 2019 WL 1110900 (Del. Super. Ct. Mar.
11, 2019)(holding that evidence of Rone's credibility issues did not demonstrate an
important change in the factual circumstances sufficient to warrant relitigation under
Rule 61(i)(4)); *State v. Romeo*, 2019 WL 918578 (Del. Super. Ct. Feb. 21,
2019)(holding that the defendant failed to demonstrate an important change in the
factual circumstances regarding Rone's credibility sufficient to warrant reconsideration
of his postconviction claims); *State v. George*, 2018 WL 4482504 (Del. Super. Ct. Sept.
17, 2018)("Defendant has presented no evidence tending to show that the [2009] trial
testimony given by Mr. Rone was in way false or misleading.").